UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CRIMINAL ACTION NO. 3:10-CR-40-H

UNITED STATES OF AMERICA                                        PLAINTIFF

V.

CURTIS GORDON, JR.                                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Defendant moves to suppress evidence found by the Louisville Metro Police Department ("LMPD") while executing a search warrant at Defendant's home and business.  He claims that the officer seeking the warrant made false statements, either knowingly or with reckless disregard for the truth of the statements, thus requiring suppression of all evidence under *Franks v. Delaware*, 438 U.S. 154 (1978).  He further argues that the warrant did not describe the items to be seized with sufficient particularity and the officers executing the warrant exceeded its scope.  The Court will address each argument in turn.

**I.**

LMPD received information that Defendant, a police officer with the Shively Police Department, was defrauding the Louisville Metro Housing Authority ("LMHA") as part of a private business operation in which Defendant provided security guards for LMHA facilities.  They also received information that Defendant was violating multiple federal tax laws.  LMPD began an investigation and eventually sought and obtained a search warrant from a Jefferson District Court judge.

In support of the search warrant, LMPD officer Oscar Graas submitted an affidavit.  The

affidavit presented the following information:

1. Mr. Donnie Wilson, the former second in command of Defendant's security business, advised Graas that Defendant's company had a contract to place five security officers at an LMHA facility from 8:00 p.m. to 8:00 a.m. According to Wilson, those officers would arrive at 8:00 p.m., but some would be diverted to other locations, such as private businesses, from 10:00 p.m. to 6:00 a.m. and would then return to the LMHA facility from 6:00 a.m. to 8:00 a.m. Wilson indicated that LMHA would be billed as if all five officers remained at its facility the entire night.

2. Wilson also informed Graas that sworn law enforcement officers ("L.E.O.") billed at $19.00 per hour while non-sworn security guards billed at $8.75 per hour. He claimed that Defendant charged LMHA for sworn L.E.O.s when non-sworn security guards were provided and simply given official police badges and uniforms.

3. Mrs. Courtney Laster, a former employee of Defendant responsible for payroll and taxes, informed Graas that bills to LMHA were falsified by showing that sworn L.E.O.s were provided when no one was provided or non-sworn security officers were provided. According to Laster, this violated the "contract" between LMHA and Defendant.

4. Laster also informed Graas that Defendant does not withhold taxes from his employees, does not pay unemployment taxes and does not report any payments to himself from the business.

5. Ms. Deborah Bolin informed Graas that forged time sheets were submitted indicating sworn L.E.O.s were provided when no one was provided or non-sworn security officers were provided.

The affidavit indicates that Graas conducted an independent investigation, including recovery of documents from LMHA, the IRS and the witnesses listed above to verify the claims made.

The judge signed the search warrants authorizing the search of both Defendant's home and business properties and seizure of:

Documents, paperwork, electronic files, software, including manuals, instruction/installation disks, CDs and storage devices and including computers, detailing the scheduling, billing and payment invoices, contractual agreements, etc... for business activities between Commonwealth Security and Housing Authority of Louisville, Dosker Manor, B-Line, Carpenter Apartments, City View apartments,

Colonial Square apartments or any other contracts to include politician Curtis Shame etc from Barren/Hart County. Any financial documents detailing the expenses, expenditures and assets of Commonwealth Security, Inc. and the individual finance details of the owner Curtis Gordon detailing the expenses, expenditures and assets. Any records or personnel files of the present or past employees of Commonwealth Security, Inc. Any police uniforms or badges stored on the property to be searched as utilized for the purpose of business for Commonwealth Security, Inc.

Defendant was eventually indicted on numerous charges of theft and fraud and was given a jury trial in Jefferson Circuit Court. During the trial, the government could not produce a written contract between LMHA and Defendant's business. According to Defendant, no such written contract existed and, therefore, his actions were not illegal. The jury acquitted Defendant of all charges.

During the execution of the search warrants, LMPD officers recovered a significant number of documents relating to the payment or non-payment of taxes. Those documents were subsequently turned over to the IRS. The United States now seeks to use those business documents in their prosecution of Defendant for tax evasion and Defendant seeks to suppress such evidence.

## II.

Defendant first argues that the evidence should be suppressed because Graas made false statements in his affidavit either with knowledge of their falsity or reckless disregard for their truth. The law in this area is well-settled.

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must

be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

Here, Defendant argues that Graas made a false statement when he quoted others as telling him there was a "contract" between Defendant's company and LMHA providing that sworn L.E.O.s would be billed at $19.00 per hour and non-sworn security officers would be billed at $8.75 per hour. In essence, Defendant argues that there was no *written* contract between the parties. To support this argument, Defendant points to the following: (1) he was acquitted by a jury on the state theft and fraud charges; (2) the state never produced a written contract between LMHA and Defendant at the state trial; (3) Graas did not present a written contract to the grand jury; (4) Graas' handwritten investigation notes state that Defendant had a "contract with housing to provide security at $8.75/hr" and a "verbal agreement to provide police officers at $19.00/hr;" and (5) an accounts payable receipt from LMHA that Graas had in his possession when he filled out his affidavit that shows LMHA paying Defendant $6,384.00 under invoice number "11/05/06 POLICE" that says, "Payments to this vendor for these services are not currently covered by contract, have not been through the procurement process, and do not have approval of the Board of Commissioners!"

The Court first notes that nowhere in the affidavit does Graas allege that there is a *written* contract or that he has ever seen a written contract. In fact, a "contract" with LMHA is referenced only two times in the entire affidavit. Rather, the affidavit discusses how the security guards were billed; Graas states that the witnesses informed him that Defendant billed $19.00 per hour for sworn L.E.O.s and $8.50 per hour for non-sworn officers and that Defendant frequently billed for sworn L.E.O.s when only non-sworn security guards were provided.

Defendant has made no showing that the witnesses did not, in fact, make these statements to Graas or even that the statements themselves are false.[1]  Conspicuously absent from Defendant's motion is any argument that he did not, in fact, bill sworn officers at a different rate than non-sworn officers.

Next, Defendant's argument takes too narrow a view of the word "contract."  While Defendant may be correct that there was no *written* agreement between LMHA and his company, there was clearly some form of agreement between the two.  In fact, the accounts payable receipt shows that.  LMHA had paid Defendant's company over $400,000.00 as of 11/09/06 according to that receipt.  Certainly, those payment were for services provided.  Thus, without doubt, the parties contracted with one another, even if there was not a formal *written* contract.  Thus, the Court finds that Defendant has not put forth a "substantial showing" that any false statements were made, much less that they were made knowingly or with reckless disregard for the truth.

Finally, and perhaps most importantly, even if the Court were to find that Defendant has put forth a showing that it was a knowing or reckless false statement for Graas to state that others informed him that LMHA and Defendant had a contract to provide sworn L.E.O.s at a different rate than non-sworn security guards, there is ample basis for probable cause in the warrant without those statements.  When the Court removes all references to billing non-sworn security guards as sworn L.E.O.s, there remain the following allegations:

1.      Wilson informed Graas that Defendant billed LMHA for security personnel that simply were not there during the times billed.

---

[1] Defendant does seem to argue that because he was acquitted there was no probable cause to support the warrant.  Of course, the burden of proof in the eventual criminal prosecution of Defendant was substantially higher than probable cause.  The fact of acquittal has little to no relevance to a determination of whether probable cause existed when the search warrant was issued.

2. Laster also informed Graas that Defendant billed for security that was not provided.

3. Laster informed Graas of violations of multiple tax laws.

4. Bolin informed Graas that bills were submitted to LMHA for security services when no one was at the LMHA facility.

Defendant makes no showing that any of these statements were false or made with knowledge of or reckless disregard of their falsity. These statements, even without any reference to a contract or billing at improper rates (the only alleged false statements), provide probable cause that Defendant was engaged in theft by deception; he was billing a government entity for services that simply were not provided. Regardless of whether there was a written contract, such activities form the basis for a proper search warrant.

In the end, Defendant has failed to make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [was] necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. Therefore, Defendant is not entitled to a *Franks* hearing and the evidence should not be suppressed on these grounds.

### III.

Defendant next argues that the warrant did not state the things to be seized with sufficient particularity. The warrant permitted the seizure of "[a]ny financial documents detailing the expenses, expenditures and assets of Commonwealth Security, Inc. and the individual finance details of the owner Curtis Gordon detailing the expenses, expenditures and assets." Defendant does not contend that any specific item the government seeks to use against him is beyond the scope of this description. Rather, he argues that such a description of property is simply too

broad to meet the particularized requirements of the Fourth Amendment.

As discussed above, there was probable cause to believe that Defendant's business was engaged in fraud and theft by deception using improper billing schemes. The financial records of the company were clearly related to such potential crimes. As the Sixth Circuit has explained, "[T]he degree of specificity required [in a warrant] is flexible and will vary depending on the crime involved and the types of items sought. 'Thus a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit.'" *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988) (quoting *United States v. Blum*, 753 F.2d 999, 1001 (11th Cir. 1985)). This case is comparable to *Henson*. There, the police were investigating allegations that the defendant was involved in an odometer tampering scheme to defraud persons of money through the sales of automobiles and executed a warrant for

> any and all records, [including] but not limited to . . . receipt books, ledger books, ledger cards, records of sales, odometer statements, file records on individual used car dealers, file records, payment receipts, bank transaction records, invoices regarding the purchase of used vehicles, automobile auction company records and/or lists, any correspondence from auto auction companies, and any motor vehicle titles.

*Id.* at 1382. Such a broad warrant, like the one in this case, allowed recovery of almost any document potentially related to the defendant's business. The Sixth approved of the warrant holding,

> In the instant case, although the warrant uses generic terms, Inspector Edwards could not have known at the time he applied for the warrant what precise records and files would contain information concerning the odometer-tampering scheme. Where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice. The description in the warrant is directed toward items likely to provide information concerning the Hensons' involvement in the odometer-tampering scheme and therefore did not authorize the officers to seize more than what was reasonable under the circumstances.

*Id.* at 1383 (quotation omitted). Likewise, Graas did not know what exact documents would

contain information relating to the scheme to defraud others based on services not provided. However, the financial documents of the company were "likely to provide information concerning the [defendant's] involvement in the [over-billing] scheme." *Id.* Therefore, the warrant was sufficiently particularized with respect to the things to be seized. *See also United States v. Gardiner*, 463 F.3d 445, 471 (6th Cir. 2006) (finding sufficient particularity in a warrant that allowed seizure of numerous things including "financial documents"); *United States v. Abboud*, 438 F.3d 554, 575 (6th Cir. 2006) ("In a business fraud case, the authorization to search for general business records is not overbroad."); *United States v. Dirr*, No. 3:08-CR-42, 2009 WL 5892996, at *19 (E.D. Tenn. Aug. 28, 2009) (finding sufficient particularity where warrant allowed seizure of "personal financial records from 1999 through August 2005" and "business financial records from 1999 through August 2005").

## IV.

Finally, Defendant argues that the search conducted by LMPD exceeded the scope of the warrant. Again, Defendant does not point to any specific piece of evidence sought to be introduced that was not covered by the warrant. In fact, it appears that the evidence the government seeks to use in this case is exactly the type of evidence for which the warrant was issued: financial documents concerning Defendant's business. Rather, Defendant complains that the search itself was overly intrusive, included the seizure of non-related items and damaged some of his property. If the government sought to introduce evidence that was beyond the scope of the search warrant, the Defendant would certainly have a valid point. However, because the evidence the government seeks to admit is squarely within the scope of the warrant and Defendant has not alleged the type of sufficiently improper and excessive search necessary to

invalidate the proper seizure of items specifically included in the warrant, *see United States v. Foster*, 100 F.3d 846 (10th Cir. 1996),[2] the Court will not suppress the evidence. *See, e.g., United States v. Jones*, 31 F.3d 1304, 1314 (4th Cir. 1994) ("[W]hile all evidence which is not identified within a search warrant may be excluded if the executing officer exceeds the scope of the warrant, such exclusion does not extend to evidence actually named in the search warrant which is discovered during the course of the search."); *Abboud*, 438 F.3d at 576 (finding that evidence seized beyond the scope of the permissible warrant should be excluded while evidence within the proper scope could be admitted).

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion to Suppress and Motion for a *Franks* Hearing are DENIED.

---

[2] In *Foster*, the Tenth Circuit excluded all evidence recovered under a search warrant permitting seizure of four specific firearms and marijuana. The officers in that case, however, appeared to completely ignore the scope of the warrant as they searched for and seized "anything of value." The Tenth Circuit specifically noted that "the extreme remedy of blanket suppression should only be imposed in the most 'extraordinary' of cases." *Foster*, 100 F.3d at 852. Defendant has not asserted the type flagrant disregard for the clear terms of the warrant as was seen in *Foster* or any facts tending to show that this is the type of "extraordinary case" entitling Defendant to blanket suppression. Rather, our circumstances are similar to *United States v. Dawkins*, 83 Fed. Appx. 48 (6th Cir. 2003), where officers searching for "firearms and ammunition" "remov[ed] vent covers, open[ed] cereal boxes, remov[ed] and inspect[ed] his doorbell and smoke detectors, and the like." *Id.* at 52. The defendant in *Dawkins*, like our Defendant, argued that the officers were really searching for evidence of other crimes. The Sixth Circuit indicated that may be true, but the search was still permissible because "the areas searched could very well have contained small arms or ammunition, making the officers' broad search permissible under the terms of the warrant." *Id.* Defendant has not identified any areas searched that could not have contained the documents sought under the warrant. The Sixth Circuit in *Dawkins* also noted that although some evidence seized was beyond the scope of the warrant, that did not require blanket suppression of the evidence seized in compliance with the warrant.

9

cc: Counsel of Record